UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------- X
IRMA REYNOSO SIERRA,

                Plaintiff,

-against-

KASHKAVAL KITCHEN LLC,
(d/b/a KASHKAVAL GARDEN),
LAURA CALIXTO in her individual capacity
ROMAN HERNANDEZ in his individual capacity
COREY SAMUELS in his individual capacity,

                Defendants,

----------------------------------------------------------- X

**JURY TRIAL DEMANDED
COMPLAINT**

Plaintiff, Irma Reynoso Sierra, (hereinafter "Plaintiff") by her attorneys, CSM LEGAL, P.C. hereby submits this Complaint and complains of the Defendants, upon information and belief, as follows:

## NATURE OF THE CASE

1. Plaintiff complaints pursuant to Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (amended in 1972, 1978 and by the Civil Rights Act of 1991, Pub. L. No. 102-166 ("Title VII"), the New York State Human Rights Law, New York State Executive Law § 296, et seq. ("NYSHRL"); and the New York City Human Rights Law, New York City Administrative Code § 8- 502(a), et seq. ("NYCHRL"). Plaintiff seeks damages to redress the injuries she suffered because of being exposed to sexual discrimination, sexual harassment, sexual assault, hostile work environment, retaliation and constructive discharge/wrongful termination.

## JURISDICTION AND VENUE

2. Jurisdiction of this Court is proper under 42 U.S.C. §2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343.

3. The Court has supplemental jurisdiction over Plaintiff's claims brought under state and city laws pursuant to 28 U.S.C. §1367.

1

4.  Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2), as a substantial part of the actions or omissions giving rise to the claims for relief, occurred within the Southern District of New York.

## PROCEDURAL PREREQUISITES

5.  On or about July 29, 2022, Plaintiff filed a complaint with the Equal Employment Opportunity Commission ("EEOC") against Defendant employer as set forth herein.

6.  On or about March 9, 2023, the EEOC mailed a Right to Sue Letter to Plaintiff.

7.  Plaintiff satisfied all administrative prerequisites and is filing this case within ninety (90) days of receiving the Right to Sue Letter.

## PARTIES

8.  Irma Reynoso Sierra is an individual female who resides in Bronx County, New York.

9.  Defendant Kashkaval Kitchen LLC (hereinafter "Defendant" and "Defendants") was and still is a duly authorized domestic business corporation doing business in the State of New York.

10. Upon information and belief, Defendant restaurant solicits business within the State of New York.

11. Upon information and belief, Defendant restaurant derives substantial revenues from goods used or consumed or services rendered in the State of New York.

12. Defendant Laura Calixto (hereinafter "Defendant" and "Defendants") is an individual female.

13. Defendant Calixto was and is the manager at Defendant employer.

14. Defendant Calixto had authority regarding Plaintiff's day to day work experience and could make decisions regarding the terms and conditions of Plaintiff's employment.

15. Defendant Corey Samuels (hereinafter "Defendant" and "Defendants") is an individual male and was and is the owner of Defendant employer.

16. Defendant Roman Hernandez (hereinafter "Defendant" and "Defendants") is an individual male and was the individual perpetuating a hostile work environment and sexually harassing Plaintiff on the basis of her sex/gender.

2

17. Defendants are covered employers within the meaning of Title VII, the New York State Human Rights Law, and N.Y.C. Admin. Code § 8-101 et seq., and at all relevant times, employed Plaintiff.

18. Plaintiff is a covered employee within the meaning of the Title VII, the New York State Human Rights Law, and N.Y.C. Admin. Code § 8-101 et seq.,

**FACTS**

19. Defendant Kashkaval Kitchen LLC d/b/a Kashkaval Garden (hereinafter "Defendant Kashkaval Garden") hired Plaintiff on or around July 2018.

20. Defendant Kashkaval Garden hired Plaintiff as a cook.

21. Plaintiff's job duties included preparing and cooking dishes.

22. Defendant Kashkaval Garden never provided Plaintiff with sexual harassment or anti-discrimination training upon hire or any time thereafter.

23. Defendant Kashkaval Garden never provided Plaintiff with an employee handbook upon hire or any time thereafter.

24. Defendant Kashkaval Garden did not have a Human Resources Department.

25. Plaintiff started experiencing a hostile work environment and sexual harassment immediately upon hire on or around July 2018.

26. Defendant Kashkaval Garden's employee, Defendant Roman Hernandez (hereinafter "Defendant Hernandez") was the individual perpetuating a hostile work environment on the basis of Plaintiff's sex/gender and sexually harassing Plaintiff.

27. Defendant Kashkaval Garden hired Defendant Hernandez as a food preparer.

28. Upon information and belief, Defendant Kashkaval Garden never provided Defendant Hernandez with sexual harassment training, anti-discrimination training, or an employee handbook.

29. Defendant Hernandez engaged in a series of sexually harassing behavior towards Plaintiff that made her feel very uncomfortable and violated as a woman.

30. Defendant Hernandez would frequently flirt with Plaintiff and made the following comments:

    a. "You're delicious"

    b. "You're very pretty"

    c. "You have big boobs"

      d.  "You have a sexy mouth"

31. Defendant Hernandez continued harassing Plaintiff and frequently told Plaintiff that he imagined Plaintiff without clothes on and imagined engaging in sexual activities with Plaintiff.

32. Plaintiff protested every time Defendant Hernandez made sexual comments to her and told Hernandez to leave her alone.

33. The harassment, however, continued.

34. Plaintiff asked Defendant Hernandez why he would flirt and make sexual comments to her. Plaintiff also told Defendant Hernandez that she was a married woman and that he should stop sexually harassing her.

35. In response to Plaintiff's complaints and protests, Defendant Hernandez responded that "I'm a man and I like this" and told Plaintiff she was too delicate.

36. Defendant Hernandez' unsolicited sexual comments made Plaintiff feel humiliated.

37. Despite Plaintiff's complaints, the harassment not only continued, but worsened.

38. Defendant Hernandez became increasingly more aggressive and hostile towards Plaintiff as she rejected Defendant Hernandez' advances.

39. Defendant Hernandez started insulting Plaintiff and using derogatory language against women in Spanish to Plaintiff including:

      a.  "Pinche vieja"[1]

      b.  "Hija de su pinche madre"[2]

      c.  "Puta vieja"[3]

      d.  "Puta"[4]

40. Defendant Hernandez continued to sexually harass Plaintiff and inappropriately touched Plaintiff without her consent.

41. At Defendant Kashkaval Garden, Plaintiff was often required to pick up products from the fridge. The area by the fridge was extremely tight and did not have cameras.

42. When Plaintiff went to the fridge, Defendant Hernandez would follow Plaintiff.

---

[1] This is a derogatory and offensive phrase against women which translates to "Fucking lady"
[2] This is a derogatory and offensive phrase against women which translates to "Daughter of your fucking mother"
[3] This is a derogatory and offensive phrase against women which translates to "Fucking old lady"
[4] This is a derogatory and offensive phrase against women which translates to "Bitch."

43. Defendant Hernandez, knowing the cameras could not see him, would approach Plaintiff from behind and rub his body up against Plaintiff and grope her.

44. Plaintiff immediately protested and told Defendant Hernandez to stop.

45. When Plaintiff told Defendant Hernandez to stop touching her, Defendant Hernandez would respond that he could not resist himself.

46. Defendant Hernandez also inappropriately touched Plaintiff from behind when he walked by her cooking station.

47. Hernandez inappropriately groped Plaintiff on approximately three occasions.

48. Despite Plaintiff's explicit complaints, the sexual harassment continued.

49. Defendant Hernandez continued to sexually harass Plaintiff and grabbed Plaintiff's buttocks on approximately four occasions.

50. Defendant Hernandez grabbed Plaintiff's buttocks when Plaintiff retrieved items from the fridge where the cameras could not see him.

51. Plaintiff protested when Defendant Hernandez grabbed her buttocks and asked him why he was touching her.

52. Defendant Hernandez blamed his actions by saying the space by the fridge was too small and that is why he grabbed her buttocks.

53. On other occasions when Plaintiff protested to Defendant Hernandez about grabbing her buttocks, Defendant Hernandez responded that if she did not like him touching her buttocks then she should leave.

54. Plaintiff felt humiliated, disrespected and helpless when Defendant Hernandez grabbed her buttocks.

55. Plaintiff also felt scared of Defendant Hernandez.

56. For example, at Defendant Kashkaval Garden, there was a staircase with a blind spot where you could not see whether someone else was coming up or down the stairs.

57. When Plaintiff used the staircase, Plaintiff would stick her arms out in order to keep a safe distance away from Defendant Hernandez in the event he was also using the staircase.

58. Plaintiff was afraid that if she did not try to keep a distance, then Defendant Hernandez would sexually harass her.

59. When Plaintiff did encounter Defendant Hernandez on the staircase with her arms out, Hernandez commented that Plaintiff was acting like Hernandez smelled.

60. Plaintiff made multiple complaints about Defendant Hernandez' sexual harassment to Defendant's managers, Defendant Calixto and Jeremy (Last Name Unknown) (hereinafter "Jeremy").

61. Defendant's Owner, Defendant Samuels was also on notice about Defendant Hernandez' sexual harassment.

62. Despite the numerous complaints throughout Plaintiff's employment, Defendants failed to intervene and remedy the situation, so the harassment continued.

63. First, on or around August 2018, immediately after being hired, Plaintiff made her first complaint to Defendant Calixto.

64. On this day, Defendant's Manager Laura revealed her romantic interests in Defendant Hernandez to Plaintiff.

65. In response, Plaintiff told Defendant Calixto that Defendant Hernandez sexually harasses her and that she has explicitly told him to stop.

66. Instead of remedying the situation, Defendant Calixto laughed and stated that Defendant Hernandez is a flirt.

67. As such, Defendants were on notice and had knowledge about Defendant Hernandez' sexual harassment at Kashkaval Garden.

68. Defendants failed to remedy the situation. Instead, Defendant Calixto began a romantic relationship with Defendant Hernandez.

69. On or around May 2022, Defendant Hernandez yelled at Plaintiff and used derogatory terms against women in Spanish to Plaintiff.

70. Immediately after this, Plaintiff complained to Defendant Calixto about Defendant Hernandez' discriminatory behavior.

71. In response, Defendant Calixto laughed and said "Yes, [Hernandez] hates you."

72. Plaintiff then stated to Defendant Calixto, "Why is [Hernandez] mean to me? Is it because I don't give him my body?" Plaintiff further stated that if Defendant Hernandez were to harass her again, she would call the police.

73. Defendant Calixto dismissed Plaintiff's complaint, laughed, and stated "Don't worry, this will end soon."

74. As such, Defendants had further notice and knowledge that Defendant Hernandez was sexually harassing Plaintiff and that Defendant Hernandez was perpetuating a hostile work environment on the basis of Plaintiff's gender/sex at Kashkaval Garden.

75. Despite this additional complaint, Defendant Kashkaval Garden failed to remedy the situation and the harassment continued.

76. On or about May 23, 2022, Plaintiff's co-worker told Plaintiff that Defendant Hernandez was always speaking about Plaintiff in a negative and derogatory manner to Defendant's employees.

77. On or about May 24, 2022, Plaintiff decided to confront Defendant Hernandez about his harassing treatment towards her.

78. When Plaintiff confronted Defendant Hernandez, he denied that he was speaking about Plaintiff in a negative and derogatory manner to other co-workers.

79. Plaintiff told Defendant Hernandez that he needed to respect women and stop harassing Plaintiff.

80. In response, Defendant Hernandez became aggressive and started slamming plates.

81. Defendant Hernandez became so aggressive that Plaintiff was afraid that Defendant Hernandez would become violent towards her.

82. As a result, on the same day, or about May 24, 2022, Plaintiff complained to her manager about the sexual harassment and hostile work environment she was experiencing at Defendant Kashkaval Garden by Defendant Hernandez.

83. Plaintiff complained to Defendant's Manager Jeremy and told him that Defendant Hernandez was harassing her.

84. Defendant's Manager Jeremy responded that he would report Defendant Hernandez to Defendant Calixto.

85. Instead of remedying the situation, Defendant Kashkaval Garden retaliated against Plaintiff and fired her.

86. On or about May 25, 2022, the day after Plaintiff complained about the sexual harassment she was experiencing, Defendant Kashkaval Garden retaliated against Plaintiff and fired her.

87. Upon information and belief, on or about February 2022, Defendant Kashkaval Garden also fired another employee who experienced sexual harassment and a hostile work environment on the basis of gender/sex by Defendant Hernandez.

88. As such, Defendant Kashkaval Garden has a pattern and practice of discrimination and retaliation.

89. Plaintiff felt humiliated, alone, and helpless when Defendant did not remedy the sexual harassment, especially during the stressful COVID-19 pandemic. Plaintiff already felt humiliated before complaining to Defendants. After Defendants fired Plaintiff, she felt that that no one heard or defended her.

90. After Defendants fired Plaintiff, Plaintiff texted Defendant Samuels.

91. Plaintiff explicitly told Defendant Samuels that she was disappointed that Defendants fired Plaintiff in response to her complaints about sexual harassment.

92. Defendant Samuels responded that there was no other solution.

93. As a result of Defendants' continued harassment, Plaintiff suffered numerous injuries including economic and emotional damages.

94. Due to the harassment by Defendants, Plaintiff suffers from high stress and anxiety.

95. Plaintiff suffered emotional pain, suffering, inconvenience, and other non-pecuniary losses.

96. Upon information and belief, the discrimination will continue after the date of this complaint. Plaintiff hereby claims a continuous practice of discrimination and claims a continuing violation and makes all claims herein under the continuing violations doctrine.

97. As Defendants' conduct has been malicious, willful, outrageous, and conducted with full knowledge of the law, Plaintiff demands punitive damages against Defendants.

98. The above are just some of the examples of unlawful conduct to which Defendants subjected Plaintiff to on an ongoing basis.

99. Defendants intentionally discriminated against Plaintiff based on her gender/sex and because of her lawful complaints of discrimination.

100. Defendants exhibited a pattern and practice of not only discrimination but also retaliation.

## AS A FIRST CAUSE OF ACTION FOR DISCRIMINATION UNDER TITLE VII
### (Not Against Any Individual Defendant)

101.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

102.     Plaintiff was an employee within the meaning of Title VII of the Civil Rights Act, 42. U.S.C. § 2000e(f).

103.     At all relevant times, Defendant employed in excess of fifteen (15) employees and was an employer within the meaning of Title VII of the Civil Rights Act, 42 U.S.C. § 2000e(b).

104.     Pursuant to Title VII, 42 U.S.C. § 2000e-2(a) it is unlawful for an employer to discharge an employee because of such employee's "sex/gender".

105.     Defendant violated Plaintiff's rights under Title VII when Defendant created and maintained a hostile work environment based on sex, sexual harassment, and sexual abuse.

106.     Defendant also violated Plaintiff's rights under Title VII because the hostile work environment based on sex, sexual harassment, and sexual abuse led to Plaintiff's constructive discharge/termination.

107.     But for her sex, Plaintiff would not have been constructively discharged/terminated.

108.     Defendant's unlawful acts were intentional, willful, malicious and in reckless disregard of Plaintiff's rights.

109.     As a result of Defendant's unlawful acts, Plaintiff suffered and continues to suffer damages, in form including, but not limited to, lost income, bonuses, lost future earnings and also suffered future pecuniary losses, severe emotional distress, mental anguish, humiliation, loss of enjoyment of life, pain and suffering, and other non-pecuniary losses.

## AS A SECOND CAUSE OF ACTION FOR RETALIATION UNDER TITLE VII
### (Not Against Any Individual Defendant)

110.     Plaintiff repeats and realleges each and every allegation in the preceding paragraphs with the same force and effect as if fully set forth herein.

111.     Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §2000e-3(a) provides that it shall be unlawful employment practice for an employer:

"(1) to . . . discriminate against any of his employees . . . because [s]he has opposed any practice made an unlawful employment practice by this subchapter, or because [s]he has made a charge, testified, assisted or participated in any manner in an investigation, proceeding, or hearing under this subchapter."

112.     Defendant engaged in unlawful employment practice prohibited by 42 U.S.C. §2000e et seq. by retaliating against Plaintiff with respect to the terms, conditions or privileges of employment because of her opposition to the unlawful employment practices of Defendant.

### AS A THIRD CAUSE OF ACTION FOR DISCRIMINATION UNDER NEW YORK STATE LAW

113.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

114.     Executive Law § 296 provides that "1. It shall be an unlawful discriminatory practice: (a) For an employer or licensing agency, because of the age, race, creed, color, national origin, sex, or disability, or marital status of any individual, to refuse to hire or employ or to bar or to discharge from employment such individual or to discriminate against such individual in compensation or in terms, conditions or privileges of employment."

115.     Defendants engaged in an unlawful discriminatory practice by discriminating against Plaintiff because of her sex and hostile work environment.

116.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of Executive Law Section 296.

### AS A FOURTH CAUSE OF ACTION FOR RETALIATION UNDER NEW YORK STATE LAW

117.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

118.     New York State Executive Law §296(7) provides that it shall be an unlawful discriminatory practice: "For any person engaged in any activity to which this section applies to retaliate or discriminate against any person because [s]he has opposed any practices forbidden under this article."

119.     Defendants engaged in an unlawful discriminatory practice by wrongfully retaliating against Plaintiff.

## AS A FIFTH CAUSE OF ACTION FOR AIDING AND ABETTING UNDER NEW YORK STATE LAW

120.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

121.     New York State Executive Law §296(6) provides that it shall be an unlawful discriminatory practice: "For any person to aid, abet, incite compel or coerce the doing of any acts forbidden under this article, or attempt to do so."

122.     Defendants engaged in an unlawful discriminatory practice in violation of New York State Executive Law §296(6) by aiding and abetting, inciting, compelling and coercing the discriminatory conduct.

## AS A SIXTH CAUSE OF ACTION FOR DISCRIMINATION UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

123.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

124.     The Administrative Code of City of NY § 8-107 [1] provides that "It shall be an unlawful discriminatory practice: "(a) For an employer or an employee or agent  thereof, because of the actual or perceived age, race, creed, color, national origin,  gender, disability, marital status, sexual orientation or alienate or citizenship status of any person, to refuse to hire or employ or to bar or to discharge from employment  such person or to discriminate against such person in compensation or in terms,  conditions or privileges of employment."

125.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(1)(a) by creating and maintaining discriminatory working conditions, and otherwise discriminating against the Plaintiff because of her gender and creating a hostile work environment.

126.     Plaintiff hereby makes a claim against Defendants under all of the applicable paragraphs of New York City Administrative Code Title 8.

### AS A SEVENTH CAUSE OF ACTION FOR AIDING AND ABETTING
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

127.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this complaint.

128.     The New York City Administrative Code Title 8, §8-107(6) provides that it shall be unlawful discriminatory practice: "For any person to aid, abet, incite, compel; or coerce the doing of any of the acts forbidden under this chapter, or attempt to do so."

129.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107(6) by aiding, abetting, inciting, compelling and coercing the above discriminatory, unlawful and retaliatory conduct.

### AS AN EIGHTH CAUSE OF ACTION FOR RETALIATION
### UNDER THE NEW YORK CITY ADMINISTRATIVE CODE

130.     Plaintiff repeats and realleges each and every allegation made in the above paragraphs of this Complaint.

131.     The New York City Administrative Code Title 8, §8-107 (1) e provides that it shall be unlawful discriminatory practice: "For an employer to discharge or otherwise discriminate against any person because such person has opposed any practices forbidden under this chapter."

132.     Defendants engaged in an unlawful discriminatory practice in violation of New York City Administrative Code Title 8, §8-107 (1) e by discriminating against the Plaintiff because of Plaintiff's opposition to the unlawful employment practices of Plaintiff's employer.

133.     Specifically, Defendants retaliated and continued to discriminate against Plaintiff after she reported the sexual abuse.

## JURY DEMAND

Plaintiff requests a jury trial on all issues to be tried.

**WHEREFORE,** Plaintiff demands judgment against Defendants, jointly and severally in an amount to be determined at the time of trial plus interest, punitive damages, attorneys' fees, costs, and disbursements of action; and for such other relief as the Court deems just and proper.

Dated: June 5, 2023
      New York, New York

CSM LEGAL, P.C.

_Ramsha Ansari_
Ramsha Ansari, Esq.
60 East 42nd Street, Suite 4510
New York, NY 10165
212-317-1200
ramsha@csm-legal.com